SH

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

**RECEIVED**

AUG 03 2020 M

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

MElViN DoMinGuEZ )
_____ )
_____ )
 )
 )
Plaintiff(s), )   Case Number: _____
 )
v. )
GENERAl EXPRESS / ARL )
TEAMONE LOGISTICS LLC )   **1:20-cv-04515**
 )   **Judge Marvin E. Aspen**
Defendant(s). )   **Magistrate Judge Jeffrey Cummings**

### COMPLAINT OF EMPLOYMENT DISCRIMINATION

1. This is an action for employment discrimination.

2. The plaintiff is MElViN DoMinGuEZ of the
county of LAKE in the state of INDIANA.

3. The defendant is GENERAl EXPRESS /ARL/TEAMONE LOGISTICS LLC whose
street address is 23462 AMOCO RD,
(city)CHANNAHON (county) COOK (state) Il (ZIP) 60410
(Defendant's telephone number) (815) – 714-2473

4. The plaintiff sought employment or was employed by the defendant at (street address)
23462 AMOCO RD (city) CHANNAHON
(county) COOK (state) Il (ZIP code) 60410

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

5. The plaintiff [*check one box*]

    (a) ☐ was denied employment by the defendant.

    (b) ☐ was hired and is still employed by the defendant.

    (c) ☑ was employed but is no longer employed by the defendant.

6. The defendant discriminated against the plaintiff on or about, or beginning on or about, (month) July , (day) 24 , (year) 2019 .

7.1 (*Choose paragraph 7.1 or 7.2, do not complete both*.)

    (a) The defendant is not a federal governmental agency, and the plaintiff [*check one box*] ☐ *has* ☑ *has not* filed a charge or charges against the defendant asserting the acts of discrimination indicated in this complaint with any of the following government agencies:

        (i) ☐ the United States Equal Employment Opportunity Commission, on or about

        (month)_____ (day)_____ (year)_____.

        (ii) ☐ the Illinois Department of Human Rights, on or about

        (month)_____ (day)_____ (year)_____.

    (b) If charges *were* filed with an agency indicated above, a copy of the charge is attached. ☐ Yes, ☐ No, **but plaintiff will file a copy of the charge within 14 days**.

It is the policy of both the Equal Employment Opportunity Commission and the Illinois Department of Human Rights to cross-file with the other agency all charges received. The plaintiff has no reason to believe that this policy was not followed in this case.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

defendant asserting the acts of discrimination indicated in this court complaint.

    ☐ Yes (month)_____ (day)_____ (year) _____

    ☐ No, did not file Complaint of Employment Discrimination

(b)    The plaintiff received a Final Agency Decision on (month)_____

    (day) _____ (year) _____.

(c)    Attached is a copy of the

    (i) Complaint of Employment Discrimination,

        ☐ Yes    ☐ No, but a copy will be filed within 14 days.

    (ii) Final Agency Decision

        ☐ Yes    ☐ N0, but a copy will be filed within 14 days.

8.    *(Complete paragraph 8 only if defendant is not a federal governmental agency.)*

    (a) ☐    the United States Equal Employment Opportunity Commission has not

        issued a *Notice of Right to Sue.*

    (b) ☐  the United States Equal Employment Opportunity Commission has issued

        a *Notice of Right to Sue*, which was received by the plaintiff on

        (month) _May_____ (day) _7____ (year) _2020__ a copy of which

        *Notice* is attached to this complaint.

9.    The defendant discriminated against the plaintiff because of the plaintiff's *[check only those that apply]*:

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

(c) ☑ Disability (Americans with Disabilities Act or Rehabilitation Act)

(d) ☐ National Origin (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(e) ☐ Race (Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981).

(f) ☐ Religion (Title VII of the Civil Rights Act of 1964)

(g) ☐ Sex (Title VII of the Civil Rights Act of 1964)

10.    If the defendant is a state, county, municipal (city, town or village) or other local governmental agency, plaintiff further alleges discrimination on the basis of race, color, or national origin (42 U.S.C. § 1983).

11.    Jurisdiction over the statutory violation alleged is conferred as follows: for Title VII claims by 28 U.S.C.§1331, 28 U.S.C.§1343(a)(3), and 42 U.S.C.§2000e-5(f)(3); for 42 U.S.C.§1981 and §1983 by 42 U.S.C.§1988; for the ADA by 42 U.S.C.§12117; for the Rehabilitation Act, 29 U.S.C. § 791; and for the ADEA, 29 U.S.C. § 626(c).

12.    The defendant [*check only those that apply*]
(a) ☐  failed to hire the plaintiff.

(b) ☐  terminated the plaintiff's employment.

(c) ☐  failed to promote the plaintiff.

(d) ☐  failed to reasonably accommodate the plaintiff's religion.

(e) ☑  failed to reasonably accommodate the plaintiff's disabilities.

(f) ☐  failed to stop harassment;

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

_____

13. The facts supporting the plaintiff's claim of discrimination are as follows:

I WAS DIAGNOSED WITH A SLEEPING DISORDER. I MADE
ARRANGEMENT TO SPEAK WITH THE OWNERS TO MOVE
ME TO
FOR A DIFFERENT POSITION, TO ACCOMMODATE MY
SLEEP DISORDER. HOWEVER BEFORE THAT HAPPEN
I WAS FIRED.

14. **[*AGE DISCRIMINATION ONLY*]** Defendant knowingly, intentionally, and willfully discriminated against the plaintiff.

15. The plaintiff demands that the case be tried by a jury. ☐ Yes ☑ No

16. THEREFORE, the plaintiff asks that the court grant the following relief to the plaintiff [*check only those that apply*]

    (a)   ☐ Direct the defendant to hire the plaintiff.

    (b)   ☐ Direct the defendant to re-employ the plaintiff.

    (c)   ☐ Direct the defendant to promote the plaintiff.

    (d)   ☐ Direct the defendant to reasonably accommodate the plaintiff's religion.

    (e)   ☐ Direct the defendant to reasonably accommodate the plaintiff's disabilities.

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

_____

_____

_____

(g) ☑ If available, grant the plaintiff appropriate injunctive relief, lost wages, liquidated/double damages, front pay, compensatory damages, punitive damages, prejudgment interest, post-judgment interest, and costs, including reasonable attorney fees and expert witness fees.

(h) ☐ Grant such other relief as the Court may find appropriate.

_Mel. Dominguez_
(Plaintiff's signature)

MELVIN DOMINGUEZ
(Plaintiff's name)

6116 RAY AVE
(Plaintiff's street address)

(City) HAMMOND          (State) IN      (ZIP) 46320

(Plaintiff's telephone number) (219 ) – 576-4757

Date:  8-3-20

periods of hypersomnolence or fatigue.

DR MUHAMMAD NAJJAR
Attending physician, Sleep Medicine
Signed: 01/28/2020 08:26

LOCAL TITLE: POLYSOMNOGRAPHY REPORT: DOMINGUEZ, MELVIN
STANDARD TITLE: SLEEP MEDICINE DIAGNOSTIC STUDY REPORT
DATE OF NOTE: JAN 27, 2020@14:57     ENTRY DATE: JAN 27, 2020@14:58:07
      AUTHOR: ALIKHWAN,MAHDI A     EXP COSIGNER:
      URGENCY:                           STATUS: COMPLETED


Polysomnography Report

Please refer to Vista Imaging for final report.

Polysomnography conducted on night of Jan 23, 2020

The study was performed with a sleep technologist in attendance for the entire
test period.

Total Recording Time: 380.5 min


Procedure:
Titration/Therapeutic : Polysomnography (PSG); initiation of continuous
positive airway pressure therapy or bilevel ventilation. The following
parameters were monitored: frontal, central and occipital EEG, electrooculogram
(EOG), submentalis EMG, nasal and oral airflow, anterior tibialis EMG, body
position and ECG. Additionally, thoracic and abdominal movements were recorded
by inductance PSG. Oxygen saturation (SpO2) was monitored using a pulse
oximeter; The tracing was scored using 30 second epochs. Hypopneas were scored
per AASM definition (3% desaturation).

Indication for the study:
The patient is known to have moderate OSA, diagnosed in July, 2019, not
compliant to APAP. He was referred for sleep titration study due to excessive
daytime sleepiness despite APAP use.

**Past Medical History:**

HTN, hyperlipidemia and moderate OSA.

**Medications:**

Losartan, Sildenafil Citrate Erythromycin top soln Miconazole Nitrate Top Pwder
Terbinafine Hcl Cream Amlodipine besylate, and Acetaminophen

*Diagnosis:*

1.G47.33 Obstructive sleep apnea  Adult

**Impression:**

This was a therapeutic CPAP titration to evaluate efficacy of this patient's
current therapy.  Prior to this test, the patient was put on Auto CPAP 5-20 cm
H2O.  CPAP was titrated from 5 to 19 cm H2O. On CPAP 19, snoring persisted the
lowest oxygen saturation was 98%.


**Recommendations**

```
-----------------------------------------                -----------------------
    MEDICAL RECORD            |        CONSULTATION SHEET -----------------------
-----------------------------------------
OMINGUEZ,MELVIN A                          SC LESS THAN 50%
XX-XX-2833    04/03/1965 (Age: 54)         SC VETERAN
116 RAY AVE
IAMMOND   INDIANA      46320 Phone: (219)576-4757 Cell: (219)576-4757
                                                                 ---------------
Consult Request: Consult                      |Consult No.: 3695635
                                              ---------------------------------
-------------------------------------         ---------------------------------
To: PULMONARY TELESLEEP OUTPT CONSULT         |Requested: 07/31/2019 2:52 pm
     From: ABJ/PACT 8
-------------------------------------         ----------------------------------
Requesting Facility: CROWNPOINT CL,IN (EFF.  =================================
============================================================================
Current Primary Care Provider: MUKOSKI,NADA
     Current Primary Care Team: ABJ/PACT 8

REASON FOR REQUEST: (Complaints and findings)
Tele-Sleep Referral

Is this consult for suspected sleep apnea? Yes.
Has the patient had a Sleep Screening Study or Polysomnography within the
last
3 years?
Yes.Date of test: 7/2019


Please describe symptoms:
Snoring: YES
Daytime sleepiness: YES
Hypertension: YES
CVA:NO
Heart Failure:NO
Atrial fibrillation:NO
Body mass index > 30: NO
Additional information:

Relevant History and Reason for Referral: Veteran requested to speak to a
===============================================================================
AUTHOR & TITLE:                             |DATE:
                                            ----------------------------------
-----------------------------------------   --------------------------------
ID #:_____ |ORGANIZATION: JESSE BROWN VAMC |REG #:____ |LOC: ABJ/PACT 8
-----------------------------------------   ----------------------------------
                    Page 1 of 9             Standard Form 513 (Rev 9-77)
```

```
-----------------------------------------------------------------------
    MEDICAL RECORD          |      CONSULTATION SHEET
-----------------------------------------------------------------------
DOMINGUEZ,MELVIN A              SC LESS THAN 50%        .
KXX-XX-2833    04/03/1965 (Age: 54)   SC VETERAN
=======================================================================
```

Reason For Request continued.

Pulmonary MD in regards to his sleep apnea and his treatment.

```
-----------------------------------------------------------------------
PROVISIONAL DIAG: Sleep Apnea, unspecified(ICD-10-CM G47.30)
-----------------------------------------------------------------------
REQUESTED BY:             |PLACE:              |URGENCY:
MUKOSKI,NADA              |Consultant's choice |Routine
md                        |                    |
(Pager: )                 |SERVICE RENDERED AS:|CLINICALLY IND. DATE:
(Phone: )                 |Outpatient          |Jul 31, 2019
-----------------------------------------------------------------------
```

CONSULTATION NOTE #44277994


 LOCAL TITLE: PULMONARY TELE-SLEEP CONSULT
STANDARD TITLE: SLEEP MEDICINE CONSULT
DATE OF NOTE: AUG 21, 2019@09:21    ENTRY DATE: AUG 21, 2019@09:22:01
      AUTHOR: SUNKARA,SAI           EXP COSIGNER:
      URGENCY:                         STATUS: COMPLETED

MAIN COMPLAINT: EDS

HISTORY OF PRESENT ILLNESS:
Pt is a 54 y/o M with hx of HTN, HLD states OSA screening prompted when falling
asleep at wheel. Patient works as a truck driver. States he usually has to take
multiple energy drinks to stay awake. Notes snoring but denies any witnessed
apneas. Recent HST showed moderate OSA. Denies any morning headaches but does
admit to dry mouth. Since starting APAP has noticed improvement in symptoms.

Patient denies sleepwalking, sleep talking, teeth grinding, and other unusual
nocturnal behaviors. Patient denies symptoms of cataplexy,
hypnogogic/hypnopompic hallucinations, or sleep paralysis.

PATIENT ACCOMPANIED BY FAMILY MEMBER/BED PARTNER: No

SLEEP SCHEDULES:
=======================================================================

```
----------------------------------------------------------------
      MEDICAL RECORD               |       CONSULTATION SHEET
----------------------------------------------------------------
DOMINGUEZ,MELVIN A                      SC LESS THAN 50%
XXX-XX-2833    04/03/1965 (Age: 54)     SC VETERAN
================================================================
```

Consultation Results #44277994 continued.

```
    Usual bedtime (lights out): 2am
    Reported sleep latency (average): 30 minutes
    Nocturnal awakenings: 2-3
    Reason: nocturia
    Reported sleep latency after nocturnal awakening (average): No
    Wake up time (lights on): noon
    Feeling refreshed upon awakening:  yes
    Total perceived sleep time (average): 8hrs
    Total perceived sleep needs:  7-8 hours
    Preferred sleep position: supine
```

DAYTIME SYMPTOMS:
- Sleepiness

Caffeinated beverages: 3 energy drinks
Scheduled naps:
Accidents: N
Near-accidents: yes
Daytime/work performance: No
Mental lapses:  memory and concentration problems  no

Epworth Sleepiness Scale (ESS):
  Scoring results:
        ESS <10 suggests no abnormal level of daytime sleepiness
        ESS of 10 or more suggests significant level of daytime sleepiness
- Fatigue
- Depression
Feels depressed: No
Suicidal/Homicidal: No

Active Problem
Hyperlipidemia E78.5 07/30/2019 MUKOSKI,NADA
Obstructive sleep apnea of adult G4 07/19/2019 GARRITY,CHRISTOPHER
Vitamin D deficiency E55.9 06/11/2018 MUKOSKI,NADA
Erectile dysfunction N52.9 06/11/2018 MUKOSKI,NADA
Osteophyte of bone M25.775 06/11/2018 MUKOSKI,NADA
Disorder of lumbosacral interverteb 06/11/2018 MUKOSKI,NADA
Back pain M54.5 05/22/2017 MUKOSKI,NADA

```
================================================================
                         Page 3 of 9
```

```
------------------------------------------------------------------
     MEDICAL RECORD           |    CONSULTATION SHEET
------------------------------------------------------------------
DOMINGUEZ,MELVIN A                 SC LESS THAN 50%
XXX-XX-2833      04/03/1965 (Age: 54)   SC VETERAN
==================================================================
```

Consultation Results #44277994 continued.

H/O: hypertension I10. 05/22/2017 MUKOSKI,NADA
Gastroenteritis * (ICD-9-CM 558.9)  09/04/2009 MUKOSKI,NADA
Hematuria, unspecified (ICD-9-CM 59 09/04/2009 MUKOSKI,NADA


FAMILY HISTORY
brother passed away from


SOCIAL HISTORY:
Lives with: fiance
Works as: Currently not working but previously truck driver working midnight/1am
Smoking: No
Alcohol: No
Drugs: No


ALLERGIES: NKDA

ROS:
negative for: fevers, chills, chest pains, cough, wheezing, night sweats,
arthralgias, myalgias,

PHYSICAL EXAMINATION:
Date           Vital          Measurement      Qualifiers
VITAL SIGNS:
Temperature:97.7 F [36.5 C] (08/21/2019 09:23)
Pulse:60 (08/21/2019 09:23)
Respiration:18 (08/21/2019 09:23)
Blood Pressure:160/96 (08/21/2019 09:23)
Height:71 in [180.3 cm] (08/21/2019 09:25)
Weight:203.8 lb [92.6 kg] (08/21/2019 09:23)
BMI: Body Mass Index is 28.4
Pain:3 (07/30/2019 05:40)

NAD, EOMI,
Lungs: CTA bil, no w/r/r
Heart: RRR, no murmurs
Extremities: no clubbing, no cyanosis
Neuro: AAOx3

==================================================================
                        Page 4 of 9
```

```
------------------------------------------------------------------
   MEDICAL RECORD          |     CONSULTATION SHEET
------------------------------------------------------------------
DOMINGUEZ,MELVIN A                SC LESS THAN 50%
XXX-XX-2833    04/03/1965 (Age: 54)   SC VETERAN
==================================================================
Consultation Results #44277994 continued.
```

1)   Non-VA ACETAMINOPHEN 500MG TAB 1000MG BY MOUTH WEEKLY   ACTIVE
        AS NEEDED


25 Total Medications        .


DATA
HST
JUL 15, 2019
"significant sleep disordered breathing with runs of repetitive obstructive
apneas associated with O2 desaturation to 80%. Snoring was recorded through the
night.
The estimated AHI on the current study is 25.7 events/hr.  which may be an
underestimate due to technical limitations of the study including that true
sleep time is not monitored or recorded.
Assessment:  moderate obstructive sleep apnea.

Recommendation: Trial of auto CPAP. Order has been placed and patient will be
contacted to pick up machine from JBVA and will be instructed on care and use at
that time as well as periodic objective monitoring through the smart card.

07/22/2019 - 08/20/2019
Compliance Report
Usage 07/22/2019 - 08/20/2019
Usage days 26/30 days (87%)
>= 4 hours 22 days (73%)
< 4 hours 4 days (13%)
Usage hours 157 hours 3 minutes
Average usage (total days) 5 hours 14 minutes
Average usage (days used) 6 hours 2 minutes
Median usage (days used) 6.hours 40 minutes
Total used hours (value since last reset - 08/20/2019) 171 hours
AirSense 10 AutoSet
Mode AutoSet
Min Pressure 5 cmH2O
Max Pressure 20 cmH2O
EPR Fulltime
EPR level 1
```

```
------------------------------------------------------------------------
    MEDICAL RECORD              |    CONSULTATION SHEET
------------------------------------------------------------------------
DOMINGUEZ,MELVIN A                  SC LESS THAN 50%
XXX-XX-2833    04/03/1965 (Age: 54) SC VETERAN
========================================================================
```

Consultation Results #44277994 continued.

Response Standard
Therapy
Pressure - cmH2O Median: 13.7 95th percentile: 18.4 Maximum: 19.1
Leaks - L/min Median: 0.3 95th percentile: 5.7 Maximum: 46.2
Events per hour AI: 1.1 HI: 0.9 AHI: 2.0
Apnea Index Central: 0.3 Obstructive: 0.6 Unknown: 0.2
RERA Index 0.9
Cheyne-Stokes respiration (average duration per night) 0 minutes (0%)


ASSESSMENT AND PLAN:
Pt is a 54 y/o M with hx of HTN, HLD who ptc to establish care for OSA.

Moderate OSA: Currently controlled. Pt underwent sleep study last month and was
found to have moderate OSA. Started on APAP. Notes improvement of symptoms when
on therapy. Reviewed previous study (see results above).
-We discussed the risks of untreated obstructive sleep apnea including stroke,
dementia, heart disease, worsened blood pressure and diabetic control, weight
gain, cardiac arrhythmia, sudden death, etc.
-Patient counseled to not drive if sleepy and to avoid alcohol and sedatives
-The patient was educated about the use and care of the CPAP machine along with
proper mask fitting.


F/u with Dr Sunkara in 6 months


/es/ SAI SUNKARA
Pulm/CC/Sleep Attg
Signed: 08/21/2019 09:38
```
    ------------------------------------------------------------------------
                        (Added Comment)
        Entered by: JORDAN,VINCENT R - 08/05/2019 10:00 am
        Responsible Person: JORDAN,VINCENT R
        Entered at: JESSE BROWN VAMC
Cl-First call to Veteran(unsuccessful scheduling): Left Voice Mail.
========================================================================
                        Page 8 of 9
```

| STATE OF ILLINOIS | ) | |
|---|---|---|
| | ) ss | |
| COUNTY OF COOK | ) | CHARGE NO. 2020CR0601 |

## AFFIDAVIT OF SERVICE

Aaron W. Jordan , deposes and states that s/he served a copy of the attached **NOTICE OF DISMISSAL FOR LACK OF SUBSTANTIAL EVIDENCE** on each person named below by depositing the same on      April 28, 2020     , in the U.S. Mail Box  at 100  West  Randolph  Street,  Chicago,  Illinois,  properly  posted  for FIRST CLASS MAIL, addresses as follows:

<u>For Complainant</u>

Melvin Dominguez
6116 Ray Ave.
Hammond, IN  46320

<u>For Respondent</u>

Tammy C. Woolley
Constangy, Brooks, Smith,
& Prophete, LLP
Two Chase Corporate Dr.
Suite 120
Birmingham, AL  35244

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that she verily believes the same to be true.

Aaron W. Jordan

## PLEASE NOTE:

The above-signed person is responsible only for <u>mailing</u> these documents.  If you wish a review of the findings in this case, you must complete the Request for Review form attached. Department of Human Rights' staff are not permitted to discuss the investigation findings once a Notice of Dismissal has been issued.

## STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS

**IN THE MATTER OF:**

MELVIN DOMINGUEZ,

                  COMPLAINANT,       CHARGE NO.    2020CR0601

AND                                         EEOC NO.       N/A

GENERAL EXPRESS/ ARL / TEAM ONE
LOGISTICS, LLC,

                  RESPONDENT.

## NOTICE OF DISMISSAL
## FOR LACK OF SUBSTANTIAL EVIDENCE

**For Complainant**

Melvin Dominguez
6116 Ray Ave.
Hammond, IN 46320

**For Respondent**

Tammy C. Woolley
Constangy, Brooks, Smith,
& Prophete, LLP
Two Chase Corporate Dr.
Suite 120
Birmingham, AL 35244

DATE OF DISMISSAL: April 28, 2020

1.     YOU ARE HEREBY NOTIFIED that based upon the enclosed investigation report, the Department has determined that there is NOT substantial evidence to support the allegation(s) of the charge. Accordingly, pursuant to Section 7A-102(D) of the Act (775 ILCS 5/1-101 et seq.) and the Department's Rules and Regulations (56 Ill. Adm. Code. Chapter II, §2520.560) the charge is HEREBY DISMISSED.

2.     If Complainant disagrees with this action, Complainant may:

     a) Seek review of this dismissal before the Illinois Human Rights Commission (Commission), 100 West Randolph Street, Suite 5-100, Chicago, Illinois, 60601, by filing a "Request for Review" with the Commission by the request for review filing date below. Respondent will be notified by the Commission if a Request for Review is filed.

     **REQUEST FOR REVIEW FILING DEADLINE DATE:** August 3, 2020

     Or, Complainant may:

     b) Commence a civil action in the appropriate state circuit court within ninety (90) days after receipt of this Notice. A complaint should be filed in the Circuit court in the county where the civil rights violation was allegedly committed.

**Page 2**
**Notice of Dismissal for Lack of Substantial Evidence**
**Charge No. 2020CR0601**

> **If you intend to exhaust your State remedies, please notify the**
> **Equal Employment Opportunity Commission (EEOC) immediately.**
> **The EEOC generally adopts the Department's findings.** The Appellate
> Courts in <u>Watkins v. Office of the State Public Defender</u>, ___ Ill.App.3d
> ___, 976 N.E.2d 387 (1st Dist. 2012) and <u>Lynch v. Department of
> Transportation,</u> ___ Ill.App.3d ___, 979 N.E.2d 113 (4th Dist. 2012), have
> held that discrimination complaints brought under the Illinois Human Rights
> Act ("IHRA") against the State of Illinois <u>**in the Illinois Circuit Court**</u> are
> barred by the State Lawsuit Immunity Act. (745 ILCS 5/1 et seq.).
> Complainants are encouraged to consult with an attorney prior to
> commencing a civil action in the Circuit Court against the State of Illinois.

**PLEASE NOTE: The Department cannot provide any legal advice or assistance.**
**Please contact legal counsel, your city clerk, or your county clerk with any**
**questions.**

3. Complainant is hereby notified that the charge(s) will be dismissed with prejudice and with no right to further proceed if a timely request for review is not filed with the Commission, or a timely written complaint is not filed with the appropriate circuit court.

4. If an EEOC charge number is cited above, this charge was also filed with the Equal Employment Opportunity Commission (EEOC). If this charge alleges a violation under Title VII of the Civil Rights Act of 1964, as amended, or the Age Discrimination in Employment Act of 1967, Complainant has the right to request EEOC to perform a Substantial Weight Review of this dismissal. Please note that in order to receive such a review by the EEOC, it must be requested in writing to EEOC within fifteen (15) days of the receipt of this notice. However, if Complainant chooses to file a timely "Request for Review" of this dismissal with the Illinois Human Rights Commission, then Complainant must wait until receipt of a **final** notice/order by the Commission before requesting a Substantial Weight Review by the EEOC. Complainant must make a written request for Substantial Weight Review by the EEOC within fifteen (15) days of the receipt of the Human Rights Commission's **final** notice/order. Any request filed prior to your receipt of a final notice/order WILL NOT BE HONORED. Send your request for a Substantial Weight Review to **EEOC, John C. Kluczynski Federal Building, 230 South Dearborn Street, Suite 1866, Chicago, Illinois 60604.** Otherwise, EEOC will generally adopt the Department of Human Rights' action in this case.

DEPARTMENT OF HUMAN RIGHTS
James L. Bennett
Director

HB1509/HB59 NOD/LSE 03/6/2020

**STATE OF ILLINOIS**
**DEPARTMENT OF HUMAN RIGHTS**

**IN THE MATTER OF:**
MELVIN DOMINGUEZ,                             )
                                              )
                                              )
                   COMPLAINANT,   )  CHARGE NO.        2020CR0601
AND                                           )     EEOC NO.            N/A
                                              )
GENERAL EXPRESS/ ARL / TEAM ONE   )
LOGISTICS, LLC,                               )
                                              )
                                              )
                                              )
                   RESPONDENT.    )

## REQUEST FOR REVIEW

Melvin Dominguez                          Tammy C. Woolley
6116 Ray Ave.                             Constangy, Brooks, Smith,
Hammond, IN  46320                        & Prophete, LLP
                                          Two Chase Corporate Dr.
                                          Suite 120
                                          Birmingham, AL  35244

**TO:** MELVIN DOMINGUEZ,

**DATE:** April 28, 2020

**REQUEST FOR REVIEW FILING DEADLINE DATE:** August 3, 2020

I hereby request that the dismissal of the charge by the Illinois Department of Human Rights (Department) be reviewed by the Illinois Human Rights Commission (Commission).

Complainant's Current Address (please print clearly):

_____Apt/Unit #_____

City_____ State_____Zip_____Phone (____)_____

**Page 2**
**Request for Review**
**Charge No. 2020CR0601**

**IN THE SPACE PROVIDED BELOW, YOU <u>MUST</u> LIST AND DESCRIBE THE SPECIFIC REASONS THAT THE CHARGE SHOULD NOT HAVE BEEN DISMISSED. If applicable, you may write on the back of this form or attach additional information or documents, which support your Request for Review. You may review your investigation file to help you prepare your request by calling (312) 814-6262 or (217) 785-5100. The Department's investigation file may be reviewed or copied upon request once the Department's investigation has been completed. The Department is not responsible for copy service fees. A minimum of three (3) business days' notice is required. Call (312) 814-6262 to make arrangements.**

---

SIGNATURE                                         DATE

<u>**YOU MUST ENCLOSE THE ORIGINAL AND THREE COPIES, INCLUDING SUPPORTING DOCUMENTS, OF YOUR ENTIRE REQUEST AND YOU MUST SIGN, DATE AND HAVE THIS FORM POSTMARKED OR HAND DELIVERED BY THE FILING DEADLINE DATE ABOVE, TO:**</u>

**Illinois Human Rights Commission, 100 West Randolph Street, Suite 5-100, Chicago, IL 60601; Telephone: (312) 814-6269; TDD: (312) 814-4760.**

Please note that pursuant to Section 5300.410 of the Commission's Procedural Rules (56 Ill. Admin. Code §5300.410), except by permission of the Commission, the request, argument and supporting materials shall not exceed 30 pages.

Further, note that pursuant to 56 Ill. Admin. Code § 5300.40(b) of the Commission's Procedural Rules, all arguments in support of the Request for Review must be written on 8 ½" x 11" paper. Any argument submitted on non-conforming paper, such as a "post-it" note, will not be considered part of the Request for Review and will be disregarded by the Commission.

**THIS FORM MAY NOT BE SENT VIA TELEFAX.**
HR1509/HR59 HRC R/R 1/17

# STATE OF ILLINOIS
## DEPARTMENT OF HUMAN RIGHTS
## INVESTIGATION REPORT

**Complainant:** Melvin Dominguez      **IDHR No.:** 2020CR0601
**Respondent:** General Express/ ARL[1]/Team One    **EEOC No.:**
Logistics, LLC

**Investigator:** PJW     Supervisor: _[signature]_    Date: 4/20/2020

**Issue/Basis:**            **Finding:**

A. Discharge/disability, Sleep Apnea[2]    A. Lack of substantial evidence

## Jurisdiction:

Alleged violation:          July 24, 2019
Charge filed:             September 9, 2019
Charge perfected:       September 16, 2019
Amendments:           N/A
Number of employees:    15+

## Verified Response:

Note: Pursuant to Public Act 100-0492, a verified response is not required for a charge filed on or after September 8, 2017.

## Employment Data:

Respondent's Consolidated EEO Report for the year of 2019 **(EXHIBIT A)** indicates that Respondent employed 32 persons during the applicable period.

## Uncontested Facts:

1. Complainant is a truck driver formerly employed by General Express/ARL (TeamOne Logistics LLC), an on-demand freight delivery service that delivers goods for industrial, corporate, and medical businesses.

---

[1] General Express/ARL entered into a contract with Team One Logistics LLC in March 2018 and it is agreed by both parties that TeamOne Logistics LLC is the proper name of Respondent for this charge.
[2] The Charge of Discrimination submitted from the EEOC lists "Retaliation" and "Disability" as the basis for this charge, however it was clarified with Complainant during the Complainant interview conducted January 14, 2020, that Complainant did not engage in a protected activity and that the issue and basis of this charge is Discharge/disability, sleep apnea.

Charge No.: 2020CR0601
Page 2 of 8

2. Complainant was hired by Respondent in a full-time position in Spring 2018 and was responsible for delivering trailers of goods to facilities within and outside of the State of Illinois.

3. Complainant's performance as a truck driver met Respondent's expectations.

4. Complainant is disabled within the meaning of section 103-I of the Illinois Human Rights Act and was diagnosed by his medical provider as having sleep apnea.

5. Complainant's disability interfered with the essential functions of his job in that he is unable to operate his vehicle if he is sleepy.

6. Complainant did not provide Respondent with medical documentation that he was disabled.

7. On July 24, 2019, Respondent assigned Complainant a load to transport and Complainant declined the job due to being too tired to drive.

8. After Complainant declined to transport his assigned load on July 24, 2019, Matt DeChene (no known disability), Operations Manager, instructed Complainant to remove his personal belongings from his assigned truck.

9. Complainant has not returned to work with Respondent since July 24, 2019.

**Complainant's Allegations-Count A:**

Complainant, a truck driver, alleges that on July 24, 2019, Respondent discharged him due to his disability, sleep apnea. Complainant alleges that his work met the performance standards of his job. Complainant alleges that his disability was unrelated to his ability to perform the essential functions of his job, with or without reasonable accommodations. Complainant claims that Respondent failed to discharge non-disabled employees under similar circumstances.

**Respondent's Defenses-Count A:**

Respondent's articulated non-discriminatory reason is that the Complainant was not discharged from his employment with Respondent. Respondent contends that Complainant admitted to falling asleep while operating his vehicle and due to Department of Transportation (DOT) safety regulations, Respondent took Complainant out of service so that he could undergo a DOT-mandated physical examination as required by law. Respondent contends that Complainant failed to participate in the required DOT physical and would not respond to their attempts at contacting him regarding this requirement and thus considered Complainant to have voluntarily resigned his position. Respondent further contends that there were no similarly situated, non-disabled employees who were not discharged under similar circumstances.

Charge No.: 2020CR0601
Page 3 of 8

## Investigation Summary-Count A:

A. **Complainant's Evidence.**

1. Complainant (disabled) stated that during his employment with Respondent he was responsible for transporting freight from Respondent's home base in Channahon, Illinois, to various locations within and outside of the State of Illinois.

2. Complainant stated that prior to being diagnosed with sleep apnea, he often had trouble staying awake while performing his job as a truck driver, and because of this he relied on energy drinks and other caffeinated beverages to stay alert while operating his vehicle.

3. Complainant stated that he fell asleep at least five times while operating his vehicle, but that he never got into an accident as a result.

4. Complainant stated that in April 2019, he initially failed a Department of Transportation (DOT) physical due to high blood pressure and was temporarily taken off the road but with medication, was able to later pass the DOT physical and return to work. Complainant stated that although his blood pressure was regulated, he was not aware that he also suffered sleep apnea at this time.

5. Complainant stated that on July 17, 2019, he was on his way to pick up a load for Respondent when he began experiencing chest pains. Complainant stated that he called Respondent's dispatch and informed them that he could not take the load and then went to Chicago's Veterans Administration hospital where he was told that he had previously been diagnosed with sleep apnea. Complainant stated that he had not been informed of this diagnosis prior to this hospital stay.

6. Complainant stated that his sleep apnea diagnosis interferes with the essential functions of his job in that he is unable to operate his vehicle during certain hours or in heavy, slow-moving traffic, without becoming fatigued and sometimes falling asleep. Complainant stated that he was advised by his physician that he should not operate his vehicle if sleepy.

7. Complainant stated that while in the hospital on July 17, 2019, he sent a text message to Matt DeChene "DeChene" (no known disability), Operations Manager, requesting that DeChene speak to the owners of Respondent on his behalf and that he be taken off the road and given an office job in dispatch or as a broker instead of driving a truck. Complainant stated he informed DeChene that he wanted to keep working for and eventually retire with, Respondent. Complainant stated he believed being given a different job at Respondent would have been a reasonable accommodation for his disability, sleep apnea.

8. Complainant stated that after his sleep apnea diagnosis he did not ask for an accommodation that would enable him to safely continue working as a truck driver, but that prior to being diagnosed with sleep apnea he had asked Respondent to schedule him early shifts, as he was more alert during the morning hours.

Charge No.: 2020CR0601
Page 4 of 8

9. Complainant stated that on July 24, 2019, he was assigned a load to transport but there were tires blown on his truck, resulting in a delay. Complainant stated that he asked Theresa Elliott "Elliott" (no known disability), Talent Manager, if he could be assigned a new vehicle straight away, but that Elliott stated that he would have to wait for DeChene to arrive at Respondent for Complainant to get his next assignment. Complainant stated that he became tired waiting for DeChene's arrival and fell asleep.

10. Complainant stated that when DeChene arrived at Respondent on July 24, 2019, he assigned Complainant a load to transport to Wisconsin, but Complainant was too tired to drive and declined the load. Complainant stated that it is a truck driver's responsibility to alert their supervisors if they are too tired or otherwise impaired and cannot safely operate their vehicles. Complainant stated that DeChene told him he would inform Marty Budkey "Budkey" (no known disability), Owner, that Complainant could not take the load. Complainant stated that Budkey later telephoned and told him that he would have Complainant's Commercial Driver's License (CDL) revoked. Complainant stated that he considered this a scare tactic to force him into transporting the load.

11. Complainant stated that after he spoke with Budkey, he received a text message from DeChene **(EXHIBIT B)** informing him that he was to clear his personal belongings out of his assigned truck.

12. Complainant stated that he did not receive formal documentation that he was discharged by Respondent.

13. Complainant provided medical documentation of a Pulmonary Tele-Sleep Consult **(GROUP EXHIBIT C)** dated August 21, 2019, that shows that Complainant had fallen asleep at the wheel and had near accidents as a result. This documentation shows that Complainant was consulted not to drive if sleepy. Complainant stated that he has not yet been medically cleared to drive, but that he is going to participate in another study to determine if he will again be able to drive a commercial vehicle. Complainant stated that he still has his CDL.

14. Complainant stated he is unaware of any similarly situated, non-disabled employees who were treated differently under similar circumstances.

B. **Respondent's Evidence.**

1. Theresa Elliott "Elliott" (no known disability), Talent Manager, stated that Complainant worked as a Truck Driver throughout his employment with Respondent. The job description for Truck Driver **(EXHIBIT D)** indicates that Complainant was responsible for transporting, unloading, and reloading freight on pallets or in containers from straight trucks, single or double trailers, tankers, or combinations of each; be knowledgeable of and able to employee safety equipment as needed while operating a vehicle; maintain driver logs; and be flexible in his available work hours as part of his employment.

Charge No.: 2020CR0601
Page 5 of 8

2.  Complainant was also required to follow Respondent's policies and procedures as detailed in TeamOne Logistics LLC's Employee Handbook which outlines its guidelines for reasonable accommodations for persons with disabilities (**EXHIBIT E**) and states, *"TeamOne will make reasonable accommodations for pregnant individuals and qualified individuals with known disabilities unless doing so would result in an undue hardship."*

3.  Elliott denies the Respondent was aware of Complainant's disability. Elliott stated that Complainant passed his Department of Transportation (DOT) Commercial Driver's License (CDL) medical certification in April 2019 (**GROUP EXHIBIT F**) and that he did not have medical restrictions on his license.

4.  Matt DeChene "DeChene" (no known disability), Operations Manager, stated that Complainant did not tell him on July 17, 2019 and that he had sleep apnea or was disabled. DeChene further denies that Complainant asked for an accommodation to perform his job on that date or at any other time.

5.  DeChene stated that truck drivers are allotted eleven hours of service with a three-hour break per shift and that on July 24, 2019, Complainant was eligible to work more hours of service. DeChene stated that dispatch attempted to assign Complainant a load to transport, but Complainant refused. DeChene stated that the issue was escalated to him and when he questioned Complainant as to why he would not accept the load, Complainant told him that he sometimes fell asleep at the wheel in traffic situations.

6.  DeChene agreed that it is a driver's responsibility to inform their supervisor's if they are unable to drive their vehicle due to safety concerns. DeChene stated that falling asleep behind the wheel presented a serious safety hazard and that Complainant could not be allowed to operate his vehicle after admitting that he sometimes fell asleep while driving. .

7.  Elliott denied that Respondent attempted to pressure Complainant to drive by threatening the revocation of his Commercial Driver License (CDL). Elliott stated that it is a Department of Transportation (DOT) requirement that drivers who admit to being impaired while driving must be taken out of service and when Complainant admitted to falling asleep behind the wheel he was immediately taken off road for this reason. Respondent cited the Federal Motor Carrier Safety Administration Regulations published in the Federal Code of Regulations (Title 49), which includes section 391.45 (**EXHIBIT G**) which mandates *"Persons who must be medically examined and certified,"* with section F of this regulation including *"any driver whose ability to perform his or her normal duties has been impaired by a physical or mental injury or disease."*

8.  Elliott stated that on July 24, 2019, she advised Complainant that he would need to undergo a physical examination and be medically cleared per DOT guidelines in order to be put back on service and allowed to drive. Elliott stated that she advised

Charge No.: 2020CR0601
Page 6 of 8

Complainant that Respondent would pay for his examination and that he was to follow up with her so that the medical exam could be scheduled.

9.      Elliott denied that Complainant requested a reasonable accommodation to perform his job. Elliott stated that even if Complainant was to be offered light duty, he would not be able to return to driving until he was medically cleared per DOT regulations.

10.      DeChene agreed that he told Complainant to remove his personal belongings from his assigned truck. DeChene stated that because Complainant was unable to drive, his regular truck was going to be assigned to a different driver and that this was standard practice when a driver was placed out of service.

10.      Elliott stated that she repeatedly called Complainant to schedule his required DOT physical examination and that Complainant would not return her calls.

11.      Elliott stated that Complainant was not terminated, but because he would not participate in the DOT mandated medical exam, he was considered to have voluntarily resigned his employment. Respondent provided Complainant's Employee Change of Status Form **(EXHIBIT H)** dated July 31, 2019, that lists his voluntary separation from Respondent.

## C.    <u>Complainant's Rebuttal.</u>

1.      Complainant denied that he voluntarily resigned with Respondent and contends that he was discharged.

2.      Complainant denied that he was informed by Respondent that he needed to take a Department of Transportation (DOT) physical required for medical clearance. Complainant stated that he spoke to Elliott on July 24, 2019, and that she stated she was trying to set up a meeting between Complainant and Respondent so that Complainant could retire with the company.

3.      Complainant stated that he was told by Elliott that he was not provided warning and should not have been told to clean out his truck.

4      Complainant stated that he spoke with Elliott late in the afternoon on July 24, 2019, and she stated that she would call him back but that he never contacted her again.

## <u>Analysis:</u>

Complainant filed this charge alleging that he was discharged by Respondent based on his disability, sleep apnea. Respondent denies that they discharged Complainant, but rather that he was placed out of service due to his admitted tendency to fall asleep while operating his vehicle. Department of Transportation regulations mandate that commercial drivers who are impaired due to physical or mental illness must undergo a physical examination to determine if they might be cleared to drive and Complainant admitted that he did not participate in this legally required examination. Further, Complainant stated that on July 24, 2019 and to the present day, he is unable to drive a commercial vehicle with or without reasonable accommodations. While Complainant

Charge No.: 2020CR0601
Page 7 of 8

stated that he requested to be assigned to a dispatcher or other office position with Respondent, these tasks are unrelated to Complainant's job as a truck driver and do not fall under the category of a reasonable accommodation under the Illinois Human Rights Act.

This investigation did not reveal that Respondent treated similarly situated non-disabled employees more favorable than Complainant. Complainant cannot meet the Prima Facie prong that his disability is unrelated to his ability to perform the essential functions of his job with or without reasonable accommodations.

**Findings and Conclusion-Count A:**

A finding of **lack of substantial evidence** is recommended because:

The evidence shows that Respondent took Complainant out of service from driving due to his admission that he was unable to safely operate his vehicle, which is consistent with the regulations set forth by the Department of Transportation and Federal Motor Carrier Safety Administration's Federal Code of Regulations (Title 49). Complainant stated that he did not ask for reasonable accommodations as outlined by the Illinois Human Rights Act and further stated that he is unable to work as a truck driver with or without reasonable accommodations, regardless. This investigation did not find that Complainant was terminated from his employment on July 24, 2019. This investigation did show that Complainant failed to take the required physical examination to work and resigned from his employment. Complainant was removed from service by Respondent for his inability to perform his job. There is no substantial evidence that Complainant was discharged due to his disability, sleep apnea.

**Witness List:**

    A. Complainant (disabled)                 (CPI)
       6116 Ray Ave.
       Hammond, IN 46320
       219-576-4757

    B. Theresa Elliott (no known disability)       (Telephone)
       Talent Manager
       C/O Tammy C. Woolley, Attorney
       Two Chase Corporate Drive, Suite 120
       Birmingham, AL 35224
       202-226-5468

    C. Matt DeChene                   (Telephone)
       Operations Manager
       C/O Tammy C. Woolley, Attorney
       Two Chase Corporate Drive, Suite 120
       Birmingham, AL 35224
       202-226-5468

Charge No.: 2020CR0601
Page 8 of 8

## Exhibits:

A. Respondent's EEO Report for 2019
B. Text message between Complainant and Matt DeChene
C. Complainant's Pulmonary Tele-Sleep Consult dated August 21, 2019
D. Job Description for Truck Driver position
E. TeamOne Logistics LLC's Employee Handbook Disability Accommodation Policy
F. Complainant's Medical Examination Certificate dated April 22, 2019.
G. Federal Motor Carrier Safety Administration's Federal Code of Regulations (Title 49), 391.45, Section F
H. Complainant's Employee Change of Status Form dated July 31, 2019

MERIT REPORT.docm
12/17